UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RACHEL HENRY ET AL.                    CIVIL ACTION

VERSUS                                 NO:08-939

BYRON TOUPS ET AL.                     SECTION: "J" (1)

**ORDER**

Before the Court are Defendant Lorel Gonzales' ("Gonzales")
**Motion for Summary Judgment (Rec. Doc. 153)**, and Defendant St.
Charles School Board's ("School Board") **Motion for Summary
Judgment (Rec. Doc. 156)**. To oppose each motion, Plaintiffs
filed a **Response (Rec. Docs. 159 and 164)**.

**FACTUAL AND PROCEDURAL BACKGROUND:**

This lawsuit arose out of an unfortunate set of events
which took place at Destrehan High School, which is administered
by the St. Charles Parish School Board. The band teacher Byron
Toups ("Toups") engaged in sexual relations with several high
school students, some of whom were minors at the time.
Plaintiffs, Rachel Henry ("Henry") and Amber Bourgeois
(Bourgeois"), filed suit against Defendants Byron Toups, the
school principal Lorel Gonzales, St. Charles School Board, and
Louisiana Public School Risk Management Agency on February 11,
2008 (Rec. Doc. 1). Plaintiffs allege that they were the victims

of sexual harassment by Toups, under 20 U.S.C. § 1681 and 42
U.S.C. § 1983, and are entitled to relief pursuant to numerous
state law causes of action, claiming damages for both
intentional torts (assault, battery, intentional infliction of
emotional distress) and negligence. Significantly, at the time
of the alleged sexual harassment, one of the Plaintiffs, Rachel
Henry, was eighteen years old, i.e. she had already reached the
age of majority.

On April 30, 2008, after an opposed motion by Plaintiffs
this matter was administratively closed pending the resolution
of the criminal charges against Byron Toups (Rec. Doc. 57). The
Court also denied the School Board's Motion to Sever claims
against it from the claims against Byron Toups.

The case was reopened on August 31, 2009 after the
resolution of the criminal matters which resulted in a
conviction of Defendant Toups. On December 22, 2009, Plaintiffs
filed their First Amended Complaint (Rec. Doc. 77). Byron Toups
filed a Motion to Dismiss All Claims of Henry on February 8,
2010 (Rec. Doc. 88). Four days later, Plaintiffs moved for Leave
to File Second Amended Complaint (Rec. Doc. 94), which was
granted by this Court (Rec. Doc. 103). The Court denied Toups'
Motion to Dismiss but allowed Toups to re-urge a similar motion
after Plaintiffs' Second Amended Complaint was entered into

record (Rec. Doc. 103). After the Second Amended Complaint was filed by Plaintiffs (Rec. Doc. 104), Defendant Toups once again moved to dismiss all claims of Henry (Rec. Doc. 116), also filing a motion to Dismiss the Emotional Distress Claim and, alternatively, Motion for Summary Judgment (Rec. Doc. 118). Further, Lorel Gonzales, Louisiana Public Schools Risk Management Agency, and St. Charles Parish School Board also filed a motion to Dismiss Claims of Plaintiff Henry (Rec. Doc. 120). During the hearing held on March 17, 2010, this Court denied all motions to dismiss (Rec. Doc. 136), later on dismissing only the claims against Louisiana Public School Risk Management Agency (Rec. Doc. 145). The instant Motions for Summary Judgment followed.

On August 4, 2010, during a hearing with oral argument, this Court denied Byron Toups' Motion for Summary Judgment (Rec. Doc. 167). Remaining before the Court are Defendant Lorel Gonzales' Motion for Summary Judgment (Rec. Doc. 153) and Defendant St. Charles School Board's Motion for Summary Judgment (Rec. Doc. 156).

**PARTIES' ARGUMENTS:**

**Motion for Summary Judgment by Lorel Gonzales**

Gonzales claims that supervisory officials, like Gonzales, cannot be held liable under Section 1983 for the acts of

subordinates, like Toups, on any theory of vicarious liability. Thus, only the direct acts or omissions of Gonzales, not those of Toups, will give rise to her individual liability under section 1983. Gonzales wishes to invoke qualified immunity to shield herself not only from personal liability for civil damages but also from suit itself. She claims that qualified immunity is appropriate unless the official's conduct clearly violates established statutory or constitutional rights measured by a reasonableness standard. Because of the strong public interest in protecting its officials from the costs of litigation, Gonzales argues that it is imperative for the Court to consider the issue of qualified immunity as early as possible in order to protect the substance of the qualified immunity defense.

Gonzales asserts that to determine entitlement to qualified immunity, this Court must engage in a two-prong inquiry. The Court must ascertain whether the Plaintiffs, individually, have sufficiently articulated a claim for the violation of a constitutional right which was clearly established. If no constitutional violation is found, the inquiry ends and judgment against the Plaintiffs is proper. If the Plaintiffs meet that initial burden, however, the Court must determine whether the conduct of the public official violated

such right by engaging in a multi-level examination of the official's actions. If the evidence is insufficient to prove each element of that inquiry, judgment against the Plaintiffs is proper. Gonzales submits that the legal analysis of either prong provides her with the protection of qualified immunity.

Gonzales adopts Toups' argument on the absence of protected constitutional right. Toups' Motion for Summary Judgment argues that consensual sex between adults, which does not even constitute a state law tort, can never arise to the level of a constitutional tort. Toups urges this Court, and Gonzales adopts this argument, not to expand the meaning of the Fourteenth Amendment by declaring that a *de facto* consensual sexual relationship between an eighteen-year-old woman and an older man constitutes a deprivation of the woman's "liberty interest" or right to "bodily integrity," simply because the woman is a student and the man is a teacher. No court has ever accepted such a premise as the foundation of a valid section 1983 claim and the Supreme Court has yet to rule on whether the right to bodily integrity includes the right to be free from rape or sexual abuse. Toups emphasizes that the relationship at bar was consensual sex between two adults. Gonzales adopts Toups' argument that finding a constitutional violation in this case would constitute abandonment of judicial restraint.

On the issue of qualified immunity, Gonzales asserts that she did not have sufficient notice of Toups' behavior and that her actions cannot be considered "deliberate indifference" that is required to overcome qualified immunity. Thus, Gonzales submits that she is entitled to qualified immunity and dismissal of all claims brought against her by Plaintiff Henry and Plaintiff Bourgeois pursuant to 42 U.S.C. §1983.

**Henry and Bourgeois' Opposition to Gonzales' Motion**

Henry and Bourgeois allege that a public official is entitled to qualified immunity for acts taken in his or her official capacity, unless those acts, such as those here, violated clearly established constitutional rights of which an objectively reasonable official would have been aware. The analysis is three-part. First, the Court must decide whether the Plaintiffs have alleged a violation of a constitutional right. Second, the right alleged must have been clearly established at the time of the violation. Finally, the official will receive immunity only if his or her actions were objectively reasonable.

In the instant case, Plaintiffs claim that Gonzales acted with deliberate indifference when she did not act upon the facts and circumstances, including a direct report, indicating that Toups was having sex with students. Gonzales' failure to even minimally investigate the complaint reported to her and to

increase supervision of Toups allowed him continued access to Henry and Bourgeois so that he could sexually harass them. Plaintiffs asserts that Toups' sexual, physical, and verbal harassment violated their constitutional rights and Gonzales testified that she is aware that sexual harassment of a student violates such rights of the students.

Thus, Plaintiffs claim that Gonzales is not entitled to qualified immunity because she was on notice of the sexual relationship between a teacher and a student and because Gonzales acted with deliberate indifference. Moreover, Gonzales' indifference allowed continued harassment of Henry and harassment of Bourgeois.

**Motion for Summary Judgment by St. Charles Parish School Board**

The St. Charles Parish School Board moved for summary judgment on the federal claims set forth against it in counts 1 through 3 of the Second Amended Complaint. Count 1 alleges that the School Board is liable for Defendant Byron Toups' sexual harassment of Plaintiffs Henry and Bourgeois under 20 U.S.C. §1681 (Title IX); count 2 alleges that the School Board is liable to Bourgeois alone for retaliation under 20 U.S.C. §1681 (Title IX) and the First Amendment to the United States Constitution; and count 3 alleges that the School Board, along with Defendants Toups and Lorel Gonzales, are liable to Henry

and Bourgeois for violations of their rights under Fourteenth Amendment, which claims were brought pursuant to 42 U.S.C. §1983. The School Board contends that summary judgment in its favor is proper on all counts  inasmuch as there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

**Count 1** – **Sexual Harassment**

The School Board asserts that while sexual harassment is a form of sex discrimination from which a student is protected under Title IX, there is no liability premised on *respondeat superior* (vicarious liability) nor is there liability on the theory of constructive notice. In order for a school board to be held liable under Title IX, a school board official with authority to take corrective action must have had actual notice of the sexual harassment accompanied by deliberate indifference to discrimination. Thus, the School Board claims that it is entitled to summary judgment on the Title IX claims since it can demonstrate that there are no material fact disputes regarding the three essential elements: (1) that no sexual harassment existed; (2) that Gonzales had no actual notice of sexual harassment; and/or (3) that Gonzales' actions did not amount to deliberate indifference.

First, the School Board argues that Henry cannot show that
sexual harassment existed as to her. Only unwelcome conduct is
actionable. Once the "unwelcome" nature is proven, the courts
will consider whether there exists one of two types of
actionable sexual harassment: *quid pro quo* or hostile
environment. Henry's and Bourgeois' claims are based on the
hostile environment theory of sexual harassment. Bourgeois was a
minor at the time of the incident so her lack of capacity is not
contested. However, because Henry was an adult of majority age,
Defendant argues that her admitted voluntary involvement in her
relationship with Toups defeats her ability to prove this
essential element. Further, there is no evidence that Henry was
subjected to the type of pervasive and severe circumstances
necessary to establish a hostile environment in the education
setting.

Second, Gonzales never had actual notice that Toups was
sexually harassing or abusing Henry, i.e. she never learned of
facts or a pattern of inappropriate sexual behavior by a
subordinate pointing plainly to that conclusion. The School
Board adopts Gonzales' Memorandum in support of her Motion for
Summary Judgment.

Finally, the School Board adopts Gonzales' Memorandum
again, contending that Gonzales' actions do not meet the test

for deliberate indifference.

**Count 2—Retaliation**

Bourgeois claims that Toups retaliated against her as a result of her complaint against him in violation of Title IX and the First Amendment. The School Board asserts that to succeed on her retaliation claim, Bourgeois must establish that the School Board retaliated against her because of her complaint. Bourgeois' claim should be dismissed because she alleged that only Toups retaliated against her, failing to demonstrate that the School Board was responsible for such retaliatory acts, i.e. that the School Board, Gonzales, or any other school official had the requisite actual knowledge of such retaliation or failed to adequately respond to such retaliation.

**Count 3—Section 1983**

Plaintiffs claim that the School Board is liable to them because Toups' actions against them were caused by or otherwise permitted by the School Board's policies and customs. The School Board argues that Plaintiffs must first identify a district "policy" or "custom" that caused the claimed injury. The School Board must know about repeated violations in order for the violations to become a "custom" actionable under section 1983. Further, in order to prevail on their 1983 action against the School Board, Plaintiffs must first establish that Toups

committed a constitutional tort against Henry. Here, the School Board adopts the arguments set forth in Toups' Memorandum in support of Motion for Summary Judgment (reproduced here for purposes of Gonzales' Motion). Furthermore, Plaintiffs have no evidence which supports their claim that Toups' actions were the result of or otherwise approved or supported by any School Board policy or custom.

**Plaintiffs' Opposition to School Board's Motion**

**Count 1** – **Sexual Harassment**

Plaintiffs respond that to recover damages from a school district for a teacher's sexual harassment of a student under Title IX, Plaintiffs must allege and prove that (1) a school district employee with supervisory power over the offending teacher (2) had actual notice of the harassment and (3) responded with deliberate indifference. In this case, Henry argues that she was sexually harassed by Toups when he had sex with her on and off school grounds, refused to stop calling her, was mentally and physically abusive, and threatened her if she told anyone. Henry claims that the School Board had been placed on repeated notice that Toups was having sex with students. In response to the actual notice and the secondary sources of information, the School Board did nothing to stop Toups' seduction and sexual abuse of students. The only event that

stopped Toups from molesting students was his arrest and conviction. Whether the School Board's actions amounted to deliberate indifference is a genuine issue to be determined by the trier of fact which defeats summary judgment.

Plaintiffs contend that Toups sexually harassed both Bourgeois and Henry. Toups pled guilty to assaulting and threatening Bourgeois. The School Board does not offer any argument that Bourgeois was not sexually harassed; in fact, it never addresses this issue. Toups also sexually harassed Henry. In the Fifth Circuit, a high school student's having sexual contact with her teacher constitutes sexual harassment or abuse. Henry argues that she did not have the capacity to consent to Toups initial advances based upon totality of the circumstances, and that Henry repeatedly tried to avoid Toups after he became increasingly abusive. Even if Henry could consent to a relationship with her school teacher, she did not consent to being controlled, physically and mentally abused, and threatened. Thus, Henry asserts that she could not have "welcomed" the teacher's advances.

Further, Plaintiffs contend that they can establish that a hostile environment existed because the harassment was frequent and severe. Toups threatened Henry both on and off campus and punched her in the face when she did not comply with his demand

for sex. Thus, the conduct was more physically threatening. Henry became so anxious about seeing Toups at school, she told her mother she wanted to leave the school. Plaintiffs argue that the evidence proves that the harassment interfered with her education and that Henry was sexually harassed by Toups.

Henry can succeed on a Title IX claim for a teacher's misconduct upon showing that the school principal had actual notice of and was deliberately indifferent to the teacher's misconduct. Henry reiterates that the School Board had been placed on notice on three separate occasions that Toups was having sex with students and/or assaulted a student. Moreover, according to Plaintiffs, the School Board, through the school principal, acted with deliberate indifference.

### Count 2-Retaliation

Bourgeois complains that the School Board, through its employees and supervisors, retaliated against her for coming forward and telling the truth. In addition to the social isolation she endured due to Toups' actions, he caused her to lose certain privileges that she previously had earned. Bourgeois' mother complained to the principal about some things that were happening, but nothing was done. Even though the retaliation was known to teachers other than Toups, and several instances had been reported to the principal, the School Board

took no action to stop Toups' retaliation. After Bourgeois quit the band, neither the principal nor anyone else spoke to her to determine why, after all her years in the band and her high level of participation, she suddenly dropped out.

**Count 3– Section 1983 Claim**

Plaintiffs argue that imposition of section 1983 liability against a municipality is appropriate in the limited circumstance when a constitutional deprivation is caused by the execution of a policy or custom of the municipality. Municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom, i.e. causation. In the present case, the School Board and its agents enacted a policy that allowed Toups to continue sexually abusing Destrehan High students despite at least three complaints about him doing so. Plaintiffs reiterate their argument that their constitutional rights were violated when Toups harassed them. Further, School Board policy and practice allowed Toups' violations of Plaintiffs' constitutional rights. Plaintiffs claim that the School Board must show that their policy did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Whether the School Board's policy and practices allowed

14

Toups access to female students for prurient reasons is an issue of fact that must be determined by the trier of fact and makes granting the School Board's motion inappropriate. Finally, Plaintiffs claim that the School Board action and inaction show reckless indifference. Despite three complaints that Toups was having sex with students, the School Board did nothing to curtail his behavior.

**DISCUSSION:**

**Standard on Motion for Summary Judgment**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." <u>Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.</u>, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. <u>Little</u>, 37

F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." <u>Delta</u>, 530 F.3d 399.

**Deprivation of a Constitutional Right**

Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting "under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory." <u>Gomez v. Toledo</u>, 446 U.S. 635, 638 (U.S. 1980) (citing 42 U.S.C. § 1983). Because both pending motions for summary judgment hinge on a deprivation of a constitutional right, this Court will briefly re-address this issue.

Defendant Byron Toups previously moved the Court to dismiss Henry's section 1983 claim, bringing a Rule 12(b)(6) Motion but his Motion was denied. This Court addressed both prongs of a section 1983 action: the existence of a constitutional right and its deprivation under the color of state law. On the issue of whether Henry had a constitutional right to be free from sexual harassment by her teacher, this Court noted:

> In that case [<u>Doe v. Taylor Indep. Sch. Dist.</u>, 15 F.3d
> 443, 451-52 (5th Cir. 1994)], the Court pointed out
> that Jane Doe's substantive due process claims are
> grounded upon the premise that school children –

16

> doesn't say school children who are under 18 – school
> children have a liberty interest in their bodily
> integrity that is protected by the due process laws of
> the Fourteenth Amendment, and upon
> the premise that physical abuse by a school employee
> violates that right.

Transcript of March 17, 2010, hearing, Rec. Doc. 58-3.

Since that ruling, there has been no evidence presented here and no new law to change that finding. Defendants cite no case law to squarely support their claim that an eighteen-year old high school student sexually harassed by a teacher cannot sustain a section 1983 claim. Further, defendants do not and cannot dispute that minor students, such as Bourgeois, clearly have a constitutional right to be free from harassment by their school teacher. Because Defendants offer no new evidence, nor is there new case law that would control the outcome of this case, this Court will stand by its original finding upon Toups' Motion to Dismiss. The Fifth Circuit does not distinguish between the age of school children and this Court is bound by the holding of Taylor Indep. Sch. Dist. : "[i]t is incontrovertible that bodily integrity is necessarily violated when a state actor sexually abuses a schoolchild and that such misconduct deprives the child

of rights vouchsafed by the Fourteenth Amendment." 15 F.3d at
451-52.

**Motion for Summary Judgment by Lorel Gonzales**

Plaintiffs allege that Gonzales is personally liable for
Toups' actions. Supervisory officials, like Gonzales, cannot be
held liable under section 1983 for the acts of subordinates,
like Toups, on any theory of vicarious liability. <u>Monnell v.
Department of Social Servs</u>., 436 U.S. 658, 691 (1978); <u>Bennett
v. City of Slidell</u>, 728 F.2d 762, 766 (5th Cir.1984) (*en banc*)
(citation omitted). Thus, only the direct acts or omissions of
Gonzales, not those of Toups, will give rise to her individual
liability under Section 1983. <u>Coleman v. Houston Indep. Sch.
Dist.</u>, 113 F.3d 528, 534 (5th Cir.1997).

The doctrine of qualified immunity is an affirmative
defense, which protects public officials sued for violations of
constitutional rights. Constitutional law is constantly
evolving, and public officials cannot be "expected to predict
the future course of constitutional law." <u>Procunier v.
Navarette</u>, 434 U.S. 555, 562 (1978). The Supreme Court has
decided that government officials performing discretionary
functions should be shielded from liability for civil damages
insofar as their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person

would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). The qualified immunity defense is intended to provide "protection to all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

Supervisory officials, such as Gonzales, may invoke qualified immunity to shield themselves not only from personal liability for civil damages but also from suit itself. <u>Jacquez v. Procunier</u>, 801 F.2d 789, 791 (5th Cir. 1986). It must be emphasized that qualified immunity is an immunity from suit, and extends beyond just a defense to liability to include all aspects of civil litigation. Unless the plaintiff states a claim for violation of clearly established law, "a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." <u>Id.</u> (citation omitted). Courts must "carefully scrutinize a plaintiff's claim before subjecting public officials to the burdens of broad-reaching discovery." <u>Id.</u> Because of the strong public interest in protecting officials from the costs of litigation, it is imperative for the Court to consider the issue of qualified immunity as early as possible and to "exercise its discretion in a way that protects the substance of the qualified immunity defense." <u>Crawford-El v. Britton</u>, 523 U.S. 574, 599-600 (1998).

The Fifth Circuit has established the following standard for analysis:

A supervisory school official can be held personally liable for a subordinate's violation of an elementary or secondary school student's constitutional right to bodily integrity in physical sexual abuse cases if the plaintiff establishes that:

(1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and

(2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and

(3) such failure caused a constitutional injury to the student.

Taylor Indep. Sch. Dist., 15 F.3d at 454.

When addressing the first prong of the test, this Court must establish whether Gonzales had notice of "facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly" to the conclusion that Toups was sexually abusing Henry. Id. Gonzales obtained a report from a counselor

who had received information from a third party wishing to
remain anonymous. In response, Gonzales met with the involved
parties and received denials of any inappropriate conduct from
Henry as well as M.G. and Toups. Gonzales received no complaints
against Toups from Henry, her mother, or anyone else. Gonzales
was not aware of any prior complaints against Toups. Although
the actions taken by Gonzales do not seem sufficient under the
circumstances, this Court does not find that these facts rise to
the level of facts or a pattern "pointing plainly" to the sexual
abuse.

The Fifth Circuit has provided examples of facts and/or
patterns for the analysis of the first prong of the test. For
instance, in Doe v. Rains Cnty. Indep. Sch. Dist., a principal
was sued because a coach was having a sexual affair with a
fifteen-year-old female student. 76 F.3d 666 (5th Cir. 1996).
The principal had been aware that the student was babysitting
for the coach. The principal saw the coach walk the student to
the bus on one occasion. There was also evidence that the
principal asked another coach whether he thought anything was
going on between the offending coach and the student. The other
coach said he had no idea. Later, another female student told
the principal that the coach had asked her for a date while he
was taping her for athletics. The principal also learned that

the coach had taken still another female student out of class to tape her ankle. Finally, the principal saw the fifteen-year-old crying at school, and after informing her parents, learned that the student was having "trouble with a man." Id. at 667. The principal had a counselor meet with the student, but she refused to identify the man. The Fifth Circuit held that these facts were not sufficient to point plainly toward the conclusion that the coach was sexually abusing the student.

Another example of insufficient notice is Hagan v. Houston Indep. Sch. Dist., where the principal was informed by a teacher that a student had reported that he had been "pinched and patted...on the buttocks by a high school coach. The principal met with the student and the coach, who explained that the touch had merely been a coaches' gesture." 51 F.3d 48, 50 (5th Cir. 1995). The principal did not inform the complaining student's parents. Approximately a month later, a second student reported to a teacher that he had been having sexual relations with the coach. The teacher informed the principal, who met separately with the second student and the coach. The second student confirmed the allegation, but the coach again denied any wrongdoing. The following day, after being bribed by the coach, the second student made a written statement withdrawing the allegation. Then, a few days later, the second student revived

the complaint; however, the second student's mother told the principal to drop the matter because the relationship between her son and the coach had been consensual. Next, another teacher reported to the principal that the brother of a third student claimed that the coach and the third student were having sexual relations. The principal met with the third student and the coach, both of whom denied the allegation. Finally, a fourth student complained to the principal that the coach "had rubbed his inner thigh, grabbed his penis through his pants and made a number of suggestive comments" while he was in the coach's office. After the District Attorney brought formal charges against the coach, he was removed.

In allowing the principal to use the qualified immunity defense, the Hagan court noted that overcoming qualified immunity is a "difficult task" for the plaintiffs. Id. at 52. The court found that plaintiffs did not show how the principal "could have foreseen any problem" before the first student's complaint. Id. Actually, the Hagan court determined that it was not until after the third student's complaint that the principal had notice of facts that pointed plainly to the conclusion that the coach was engaging in sexual conduct with students. Id. Nonetheless, the Fifth Circuit dismissed the fourth student's Section 1983 claim for failing to meet the second prong of the

test (i.e., deliberate indifference) because ineffectiveness is not enough to overcome qualified immunity. Id. at 52.

In the case at bar, Henry, who denied to Gonzales any misconduct by Toups, did not make a complaint to school officials until she filed this lawsuit for damages a year later. It is also clear that Gonzales had never heard any previous rumor or complaint involving a sexual relationship between Toups and any student. Gonzales did not know that Henry and M.G. were lying. Gonzales, like the principal in Hagan, could not have known that Henry was engaged in a sexual relationship with Toups until she complained about it. Although Gonzales received an indication about Toups' inappropriate behavior with his students, this Court concludes that this information standing alone is not enough to plainly point to the presence of sexual abuse.

Furthermore, assuming, *arguendo*, that Gonzales did receive adequate notice, this Court finds that Plaintiffs cannot avoid dismissal of their claims against the principal because they cannot show that she acted with deliberate indifference. The test for deliberate indifference is not whether Gonzales did all she could, or should have done, but whether she failed to take steps that were "obviously necessary" under the circumstances. Taylor Indep. Sch. Dist., 15 F.3d 443, 454 (5th Cir.1994) (*en

24

*banc*); <u>Hagan</u>, 51 F.3d 48, 51 (5th Cir.1995). As the Fifth
Circuit has declared, "the deliberate indifference standard is a
high one." <u>Doe v. Dallas Indep. Sch. Dist.</u>, 153 F.3d 211, 219
(5th Cir. 1998). Actions that are "merely inept, erroneous,
ineffective, or negligent do not amount to deliberate
indifference." <u>Id.</u> at 219. Indeed, when the Fifth Circuit adopted
the deliberate indifference standard and rejected the gross
negligence standard for supervisory liability in Section 1983
cases, it explained: "'gross negligence' and 'deliberate
indifference' involve different degrees of certainty . . . .
Whereas the former is a 'heightened degree of negligence,' the
latter is a 'lesser form of intent.'" <u>Taylor Indep. Sch. Dist.</u>,
15 F.3d at 453, n.7 (citing <u>Germany v. Vance</u>, 868 F.2d 9, 18
n.10 (1st Cir. 1989)).

Further, qualified immunity is not defeated "even if the
harm ultimately was not averted." <u>Farmer v. Brennan</u>, 511 U.S.
825, 844 (1994). It is also not defeated if the supervisor's
response was "ineffective to prevent" the constitutional harm.
<u>Hagan</u>, 51 F.3d at 52 (citation omitted). The Fifth Circuit has
found that a principal did not exhibit deliberate indifference
when he concluded, in error, that an allegation was not true and
the principal's actions were ineffective in preventing a teacher
from sexually abusing students, even though the erroneous

conclusion had tragic consequences. <u>Doe ex rel. Doe v. Dallas</u> <u>Indep. Sch. Dist.</u>, 220 F.3d 380, 388 (5th Cir. 2000). As the Fifth Circuit has observed, "[s]urely an official does not expose himself to liability by reporting the information to a superior; or by advising a subordinate state actor of rumors or information that the official has received and warning the actor that severe disciplinary actions will be taken if the rumors are confirmed . . . ." <u>Taylor Indep. Sch. Dist.</u>, 15 F.3d at 457, n.12. "[T]here are many courses of action open to a school official that negate deliberate indifference but do not expose the official to liability on grounds of taking premature disciplinary action against a state actor." <u>Id.</u>

Instructive on this issue is the analysis conducted by the Fifth Circuit in <u>Taylor Indep. Sch. Dist.</u> <u>Id.</u> There, the court examined the actions of both the principal and the superintendent. As to the principal, the Court concluded that he acted with deliberate indifference on the following facts. The court noted that the principal had heard about problems with the coach for two years and, during that time, had only one conference with the coach and told him not to be "too friendly" with the girls. When the principal received parental complaints of favoritism in the classroom, he suggested to the parents that their children were "jealous" of the favorite students. He

dismissed the librarian's report of "child molestation" she had personally observed. Instead of transferring the plaintiff, the principal transferred a student who found an inappropriate card from the coach to the plaintiff out of the class and never discussed that incident with anyone. He never recorded any of the substantiated complaints in the coach's personnel file. He never "took the obvious step" of transferring the plaintiff out of the coach's class or directing the coach to stay away from the plaintiff. He heard rumors and received complaints for two years before reporting anything to the superintendent. The Fifth Circuit found that, under these circumstances, a jury could reasonably conclude that had the principal responded prior to the time the coach began a sexual relationship with the student, it may not have begun at all. The court also found that a jury could interpret the principal's discussions with the coach to either have not occurred because the coach did not remember them or to have been done only because of the involvement of the superintendent. Thus, the Fifth Circuit found that a reasonable jury could conclude that the principal acted with deliberate indifference.

As to the superintendent, the Fifth Circuit noted that, when he received a complaint from a parent, the superintendent promptly notified the principal and instructed him to speak to

the coach. The superintendent received no other reports until parents again complained to him. He contacted the parent of the child involved immediately and the parents assured him the child was not present at the time of the alleged incident. The plaintiff's parents complained to the superintendent shortly thereafter and he responded by meeting with the plaintiff who denied any sexual relationship and verbally reprimanded the coach. The court found that, although the superintendent's response was ineffective, it did not exhibit deliberate indifference.

In the instant case, upon receiving the rumored information from the school counselor, Gonzales immediately contacted Gomez, her supervisor. Gomez confirmed the procedure Gonzales was to follow and instructed her to interview the students involved and get statements from them, which she did. Henry and M.G. denied any inappropriate conduct and signed statements to that effect. Then Gonzales questioned Toups, who also denied any inappropriate conduct, and warned Toups that any such conduct would result in disciplinary proceedings against him. As proof of deliberate indifference, plaintiffs provide a list of actions that they contend Gonzales should have taken but did not. Although this Court recognizes that the actions taken by the principal were ultimately ineffective, this is not enough to

show that Gonzales acted in a manner which was deliberately indifferent to Plaintiffs' constitutional rights. The evidence does not demonstrate that Gonzales failed to take steps that were "obviously necessary" under the circumstances.

Because Defendant principal Gonzales has met her burden of showing that there is no genuine issue of material fact in dispute as to her conduct and because Plaintiffs are unable to present sufficient evidence of actual notice and deliberate indifference, Gonzales' Motion for Summary Judgment is granted, affording her qualified immunity in this case.

**Motion for Summary Judgment by St. Charles Parish School Board**

**Count 1—Sexual Harassment**

Title IX of the Education Amendments of 1972 (Title IX), 86 Stat. 373, as amended, 20 U.S.C. § 1681 et seq. provides a private right of action against a school district based upon teacher-on-student sexual harassment. <u>Davis v. Monroe County Bd. of Educ.</u>, 526 U.S. 629, 639-40 (1999). A student who is sexually abused by a teacher can recover from the school district under Title IX if the "school district actually knew that there was a substantial risk that sexual abuse would occur." <u>Rosa H. v. San Elizario Indep. Sch. Dist.</u>, 106 F.3d 648, 652-53 (5th Cir.1997). Thus, to recover damages from a school district for a teacher's sexual harassment of a student under Title IX, the plaintiff

must allege and prove that (1) a school district employee with supervisory power over the offending teacher (2) had actual notice of the harassment and (3) responded with deliberate indifference." <u>King v. Conroe Indep. Sch. Dist.</u>, No. 05-20988, 289 F. App'x 1, *4 n.3 (5th Cir. May 29, 2007) (citing <u>Gebser v. Lago Vista Indep. Sch. Dist</u>., 524 U.S. 274, 290 (1998)).

The complaint alleges that the first two principals (Simon and Gonzales) acted with deliberate indifference to sexual harassment by Toups. The actions of the last principal (Weber) are not at issue. This Court concluded that principal Gonzales was protected from suit by qualified immunity because she did not receive sufficient actual notice of harassment and because her response was not deliberately indifferent. Having reviewed the evidence on this motion for summary judgment, this Court nonetheless concludes that the action of the two principals over the several years could meet the standard for liability of the School Board under Title IX. Several students were sexually harassed, physically abused, and mentally taunted by Toups. Three principals received notice that harassment was taking place. The School Board had been placed on repeated notice that Toups was having sex with students, first when Carlie Aucoin reported him to her principal, and when the anonymous student reported Toups' sexual encounter with Henry and M.G. The very

30

fact that Gonzales did not know about the previous complaint against Toups by Aucoin, although exonerating as to Gonzales, implies that the School District had no adequate procedure in place to prevent the abuse of its students. As a consequence of the cumulative knowledge of the two school principals attributable to the School Board, the Board itself may be found to have acted with deliberate indifference when it failed to take action to remedy sexual abuse of its students. Further, the motion for summary judgment in favor of the School Board is not appropriate because the extent of the harassment and abuse by Toups is at issue and needs to be resolved by the fact-finder.

**Count 2-Retaliation**

The Supreme Court has extended the reach of Title IX to retaliation claims, finding that "retaliation against individuals because they complain of sex discrimination is 'intentional conduct that violates the clear terms of the statute.'" Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173-74, 183 (2005) (citation omitted). To prevail on a retaliation claim, Bourgeois has to prove that she was retaliated against because of her complaint about sex discrimination. Id. at 184.

Bourgeois asserts that the School Board, through its employees and supervisors, retaliated against her for coming

forward and telling the truth. She claims that in addition to
the social isolation she endured due to Toups' actions, he
attempted to and caused her to lose certain privileges that she
previously had earned. Additionally, the principal of the school
was put on notice of retaliatory actions taken against
Bourgeois. Because the School Board argues that no retaliatory
actions were taken against Bourgeois, this Court concludes that
there is a genuine issue of material fact as to what actions
were taken by school employees after Bourgeois complained of sex
discrimination, making summary judgment inappropriate.

**Count 3—Section 1983 Claim**

A local government may not be sued under section 1983 for
an injury inflicted solely by its employees or agents. Monell v.
Dep't of Soc. Serv. of City of New York, 436 U.S. 658, 694
(1978). "Instead, it is when execution of a government's policy
or custom, whether made by its lawmakers or by those whose
edicts or acts may fairly be said to represent official policy,
inflicts the injury that the government as an entity is
responsible under § 1983." Id. Thus, a municipality can only be
found liable for actions for which it is actually responsible.

"This requirement was intended to distinguish acts of the
municipality from acts of employees of the municipality, and
thereby make clear that municipal liability is limited to action

for which the municipality is actually responsible." <u>Burge v. Parish of St. Tammany</u>, 187 F.3d 452, 471 (5th Cir. 1999) (citing <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 479 (1986)). "[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001) (citing <u>Monell</u>, 436 U.S. at 694).

An "official policy" is defined as "a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government entity or by an official to whom the entity has delegated policy-making authority," but it also encompasses "a persistent, widespread practice of officials or employees which although not authorized by officially adopted and promulgated policy is so common and well-settled as to constitute a custom that fairly represents the entity's policy. <u>Cozzo v. Tangipahoa Parish Council</u>, 279 F.3d 273, 289 (5th Cir. 2002) (citing <u>Johnson v. Moore</u>, 958 F.2d 92, 94 (5th Cir.1992)).

In the present case, Defendants cannot show the absence of genuine issue of material fact regarding the Plaintiffs' claim against the School Board. Because the sexual abuse was pervasive (i.e. involving several students) and long-lasting (starting in Spring of 2004 and concluding in Summer of 2007), a jury could

reasonably conclude that the School Board policy in effect allowed for the abuse to go on. Further, as previously noted, although Gonzales' actions alone do not amount to deliberate indifference, the inaction of the two principals and the lack of communication between them may reasonably be found to constitute deliberate indifference. The School Board was put on notice of the ongoing sexual abuse in Spring of 2004 and accomplished nothing to remedy the situation. Whether the School Board's policy and practices allowed Toups access to female students for prurient reasons is an issue of fact that must be determined by the trier of fact and is an inappropriate finding on motion for summary judgment.

For the foregoing reasons, it is **ORDERED** that Lorel Gonzales' **Motion for Summary Judgment (Rec. Doc. 153)** is **GRANTED** and the School Board's **Motion for Summary Judgment (Rec. Doc. 156)** is **DENIED** on the counts of sexual harassment, retaliation, and section 1983 liability.

New Orleans, Louisiana, this the 23rd day of August, 2010.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE